**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ESSEX MASON, individually and on behalf of a class of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 06 C 3449 |
| THOMAS DART, Sheriff of Cook County; EDWIN BURNETTE, Public Defender Of Cook County; THE HON. KENNETH WRIGHT, Chief Judge of the Municipal Division of the Circuit Court Of Cook County, | ) ) ) ) ) ) ) ) | The Hon. James B. Zagel |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Essex Mason, individually and on behalf of a class of similarly situated persons, by his undersigned attorneys, for his First Amended Complaint for Injunctive and Declaratory Relief against defendants Thomas Dart, Sheriff of Cook County; Edwin Burnette, Public Defender of Cook County; the Hon. Kenneth Wright, Chief Judge of the Municipal Division of the Circuit Court of Cook County, alleges as follows:

**INTRODUCTION**

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution seeking declaratory and injunctive relief with respect to the practices employed in Cook County, Illinois to set bail for indigent persons arrested within the City of Chicago. Cook County conducts bail hearings via closed circuit television rather than through an in-person hearing at which the applicant for bail

is physically present in the courtroom with his counsel and with the judge. The Cook County practice of conducting "video bail hearings" results in flagrant denials of the procedural due process rights of bond applicants and of their right to the effective assistance of counsel at their bond hearings. Indigent bond applicants are given no meaningful opportunity to consult with counsel before or during these hearings; are stripped of any realistic ability during the hearing to communicate to the judge personal circumstances relevant to the setting of bail in their cases; and often have a prohibitively high bail set in a hearing that typically lasts less than 30 seconds. The defendants could correct this procedural unfairness and hold in-person bond hearings at little or no additional cost.

## JURISDICTION AND VENUE

2. This is a civil action arising under 42 U.S.C. § 1983 and the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Cook County is located in this District and the events giving rise to the claim occurred in this District.

## PARTIES

3. Plaintiff Essex Mason is an Illinois citizen and a resident of Chicago, Illinois.

4. Defendant Thomas Dart is the Sheriff of Cook County. His deputies are in charge of the maintenance of the holding pens in which bond applicants are confined prior to their hearings in Central Bond Court.

5. Defendant Edwin Burnette is the Public Defender of Cook County. His assistants and investigators are responsible for the effective representation of the indigent detainees who appear in Central Bond Court.

6. The Hon. Kenneth Wright is the Presiding Judge of the Municipal Division of the Circuit Court of Cook County and, in that capacity, has overall supervisory responsibility for the conduct of Central Bond Court. This suit seeks only declaratory relief against Judge Wright in accordance with 42 U.S.C. § 1983.

7. The actions that each of the defendants is alleged to have taken in this case were under color of state law and, thus, constituted state action.

## CLASS ACTION ALLEGATIONS

8. Plaintiff files this action on behalf of himself and on behalf of all persons arrested within the City of Chicago who will be deprived of their liberty following a bail hearing at which they will be represented by the Cook County Public Defender and which will be conducted via closed circuit television at the Central Bond Court in the Criminal Court building at 26th Street and California Avenue. This action may be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

9. This class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the Central Bond Court conducts bail hearings via closed circuit television for approximately 100 to 150 arrestees each day and that a substantial percentage of these individuals are unable to make bond and, thus, are deprived of their liberty as a consequence of the video bond hearing.

10. There are questions of law or fact common to the class. These common questions include, but are not limited to, whether Cook County in fact has a policy and practice of conducting video bail hearings and whether, if this policy exists, it denies bail applicants their Fifth and Fourteenth Amendment rights to procedural due process.

11. The Plaintiff's claims are typical of the class. On June 25, 2006, Plaintiff was arrested by the Chicago Police Department who allege that he committed the offense of possession of a stolen motor vehicle. In accordance with standard practice for persons charged with felony offenses in which the State is not seeking to deny bond, the Plaintiff, at the time this suit was instituted, expected to be transported to the Criminal Courts Complex at 26th St. and California Ave. for a bond hearing, which was conducted via closed circuit television and at which, because Plaintiff is indigent, was represented by the Cook County Public Defender.

12. Plaintiff will fairly and adequately protect the interests of the class. The MacArthur Justice Center, whom Plaintiff has retained to represent the class, is experienced in civil rights and class action litigation and will aggressively seek to vindicate the rights of the Plaintiff class.

13. The defendants have acted on grounds generally applicable to the class, thereby making appropriate declaratory relief and final injunctive relief with respect to the class as a whole.

## ALLEGATIONS OF FACT

14. In or about June 1999, Cook County implemented General Order 99-6 of the Circuit Court of Cook County (the "Order"), a copy of which is attached hereto as Ex. A. The Order established the Central Bond Court and directed that bond hearings, except in cases where the State is seeking to deny bond for persons charged with non-probationable, felony offenses, "shall be conducted by means of closed circuit television."

15. On each court day, approximately 100 to 150 bond applicants, persons who have been arrested within the past 24 hours within the City of Chicago, are transported from police lock-ups around the City to holding pens located in the basement of the Criminal Court building

4

directly below Courtroom 101, where Central Bond Court is held. The great majority of these persons are indigent and are represented at their bond hearings by the Cook County Public Defender.

16. On information and belief, the holding pens are designed to accommodate approximately 25 to 30 detainees. Two of the pens are designated for males and one is designated for females. A typical call in bond court includes over 100 males. Thus, each male holding pen is filled to close to twice its rated occupancy, making it impossible for detainees even to sit down while waiting in the pens. On most days, individuals who are physically ill and/or who are suffering from drug withdrawal are confined in the holding pens. The noise level in the pens is always excessive and temperatures are sometimes uncomfortable.

17. Bond applicants represented by the Public Defender have no opportunity to speak with a lawyer prior to the beginning of the Central Bond Court call. Instead, shortly prior to the call, the bond applicants each speak for no more than a few moments with an investigator who stands at the front of the holding pen, calls each detainee forward by name, and records information about their residence, employment, family, and military service on a chart that is then made available to the Assistant Public Defender handling the Central Bond Court call. Because of the conditions in the holding pens and the number of individuals confined there, the conversations between the investigator and the bond applicants are not private or confidential.

18. The Sheriff of Cook County, whose deputies are in charge of the holding pens, strictly limits the access of Public Defender personnel to the bond applicants in the holding pens prior to the beginning of the court call. No access is permitted prior to approximately 10:30 a.m. each day, and access is cut off at approximately 12:15 p.m. Ordinarily, two or three investigators are assigned to conduct interviews of all the detainees. These two or three investigators must

"interview" 100 to 150 bond applicants (in the conditions described in the preceding paragraphs) within approximately 100 minutes.

19.     The Circuit Court of Cook County does not provide any of the participants in the bond-setting process with an investigative report regarding the individuals on the Central Bond Court call.  As a result, the only information available to the judges who preside over Central Bond Court is the pending charge, the criminal history of the bond applicant and what little information the investigator assembles during the interview described in the preceding paragraph.  This is insufficient information to enable the judges to make an informed bond determination.

20.     The Illinois Pretrial Services Act, 725 ILCS 185/0.01 *et seq.*, requires each Circuit Court within the State to establish a pretrial services agency to provide judges who make bond determinations with accurate background data regarding the pretrial release of persons charged with felonies.  Since 1990, the Illinois Supreme Court has provided Cook County with funding to hire pretrial services officers to assemble this data.  On information and belief, the Circuit Court has redirected the Supreme Court funds to other purposes.  In practice, there are no pretrial services officers assigned to prepare background reports on bond applicants on the Central Bond Court call.

21.     When Central Bond Court convenes, the bond applicants file through a corridor in the basement of the Criminal Court building to a small room with a podium in the center.  Facing the podium are a video camera and a television monitor on which the video image of the judge presiding over the call in Courtroom 101 appears.  A Deputy Sheriff directs each bond applicant to the podium when his case is called.  An Assistant Public Defender is supposed to be stationed in the basement video room throughout the court call, although he is sometimes absent.  This

Assistant Public Defender takes no part in the presentation of the cases to the court. This attorney furnishes each bond applicant with a piece of paper listing the next court date in the applicant's case and signals the bond applicants to be silent during the proceedings and to move away from the podium when their cases are finished.

22. In Courtroom 101, an Assistant Public Defender and an Assistant State's Attorney stand before the bench. Video monitors are situated in the courtroom so that the judge is able to see a video image of the bond applicant. The bond applicant's image on the video monitor is also visible to spectators in the courtroom and can be seen by the attorneys standing before the bench, but only if they step back from the bench and look to the side of the courtroom. The images shown both in the courtroom and in the basement are grainy and of poor quality. Typically the bond applicant's image is not centered on the video monitor.

23. The hearings almost always last less than 30 seconds. In that very short period of time, the State's Attorney recites the charges against the detainee; the Court makes a *Gerstein v. Pugh* finding of probable cause; the State's Attorney "argues" for a high bond (reciting any criminal history or past failures to appear); the Assistant Public Defender reads aloud information concerning the applicant from the investigator's chart (frequently mentioning no more than the applicant's address, marital status, and years of residence in Chicago); the court sets the amount of the bond; and the court continues the case for further hearing – typically on a date two to three weeks following the bond hearing. The hearings progress so rapidly that it is not uncommon for the proceedings to commence before the defendant is even "present" before the podium.

24. As a direct and proximate result of their absence from the courtroom, the lack of any opportunity to communicate with counsel prior to the hearing, and the lack of a pretrial

7

services investigative report, the bond applicants are deprived of any meaningful opportunity to communicate to the court information that may be relevant to the setting of bail, including, by way of example, inaccuracies in the criminal history information supplied to the court by the Assistant State's Attorney and/or additional life circumstances that might warrant setting a low bond or allowing the applicant to be released on individual recognizance.

25. Because of the physical separation between themselves and the court and the lack of any opportunity to communicate with counsel prior to the hearing, applicants typically perceive themselves to have no ability or entitlement to communicate with the court. In fact, on the rare occasions when a bond applicant seeks to address the court directly, he is immediately silenced by the sitting judge.

26. The bond applicants also have no practical ability to communicate with the Assistant Public Defender handling the hearing in the courtroom. The applicants have not met that Assistant Public Defender prior to the hearing and are unable even to see an image of the Assistant Public Defender on the video monitor in the room in which they are located during the hearing. Therefore, the bond applicants cannot, as a practical matter, communicate to their counsel inaccuracies in the criminal history information supplied to the court by the Assistant State's Attorney and/or additional life circumstances that might warrant setting a low bond or allowing the applicant to be released on individual recognizance.

27. As a direct and proximate result of the bond applicants' physical separation from the judge, the judge loses the ability to perceive those applicants as three dimensional human beings. Research has shown that conducting bond hearings by closed circuit television rather than in person may negatively prejudice the judge against the bond applicants and cause inappropriately high bonds to be entered. In addition, conducting bond hearings in this manner

deprives the judge of any opportunity to observe whether there are signs that a particular bond applicant is suffering from injury or illness and in need of treatment.

28. As a result of the procedures described in the preceding paragraphs, the median bond amounts for persons appearing on the Central Bond Court call are higher (after adjustment for inflation) than the median bond amounts that were set for persons arrested in Cook County prior to the implementation of the Order.

29. Plaintiff was arrested by the Chicago Police on or about June 25, 2006 and charged with the offense of possession of a stolen motor vehicle. At the time this suit was instituted Plaintiff expected to be transported to the Criminal Court Complex at 26th and California Ave. for a hearing in Central Bond Court on June 26, 2006. Plaintiff's bond hearing was conducted in the manner described in the preceding paragraphs. After a "hearing" that lasted no more than a few seconds, Plaintiff's bond was set in the amount of $70,000.00 – an amount that Plaintiff could not possibly raise.

30. It would be possible for Cook County to conduct in person bond hearings, and to provide bond applicants with a meaningful opportunity to consult with counsel prior to such hearings at little or no additional cost.

31. Bond applicants, who are presumed innocent, have a constitutionally recognized right not to be subjected to excessive bail..

32. The stakes in the bond hearings described in the preceding paragraphs are extremely high for the bond applicants because they may lose their liberty for a significant period of time as a result of the determination made in the bond hearing. Bond applicants' next opportunity to contest the bail determination is at the preliminary hearing, which typically occurs two to three weeks following the video bail hearing. Assistant Public Defenders almost never

seek reconsideration of the bond set in Central Bond Court (either at the time of the preliminary hearing or thereafter) because it is well known that judges in the Circuit Court of Cook County are extremely reluctant to reconsider bond after it has initially been set.

33. The defendants are acting with deliberate indifference to the rights of Plaintiff and the members of the Plaintiff class by conducting Central Bond Court hearings in the manner alleged in this complaint.

## COUNT I

**(Declaratory Relief – Violation of Due Process and the Eighth Amendment)**

34. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count I.

35. This Count is brought against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. There is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates Due Process and the Eighth Amendment. This Count seeks an order declaring the rights of the Plaintiff class with respect to that controversy.

36. By continuing to conduct video bond hearings in the manner alleged in this complaint the defendants will violate Plaintiff's rights and the rights of the members of the Plaintiff class to procedural due process, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and of the Plaintiff's rights and the rights of members of the Plaintiff class not to be subjected to excessive bail in violation of the Eighth Amendment of the United States Constitution.

WHEREFORE, Plaintiff prays that this Court enter an order certifying this cause as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; that this Court

10

enter a judgment declaring that continuing the practice of conducting video bond hearings as alleged in this complaint will deprive the Plaintiff and the members of the Plaintiff class of procedural due process in violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution and of their right under the Eighth Amendment of the United States Constitution not to be subjected to excessive bail; that this Court award Plaintiff reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and for such further and additional relief as this Court may deem just and proper.

## COUNT II

### (Declaratory Relief – Violation of the Sixth Amendment)

37. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count II.

38. This Count is brought against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. There is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates the Sixth Amendment right to the effective assistance of counsel. This Count seeks an order declaring the rights of the Plaintiff class with respect to that controversy.

39. The Sixth Amendment to the United States Constitution affords bond applicants the right to counsel at their bond hearings.

40. Through no fault of any individual Assistant Public Defender, the structural limitations imposed by the circumstances of the Assistant Public Defender's very limited access to its clients prior to Central Bond Court hearings and by the use video bond technology to conduct those hearings prevent the assigned Assistant Public Defender from assisting bond applicants during Central Bond Court hearings.

11

41. Although the Office of the Public Defender makes counsel available to bond applicants at Central Bond Court, the likelihood that even the most fully competent lawyer could provide effective assistance counsel under the conditions described in the preceding paragraphs is virtually non-existent.

WHEREFORE, Plaintiff prays that this Court enter an order certifying this cause as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; that this Court enter a judgment declaring that continuing the practice of conducting video bond hearings as alleged in this complaint will deprive the Plaintiff and the members of the Plaintiff class of their rights under the Sixth Amendment of the United States Constitution to the effective assistance of counsel; that this Court award Plaintiff reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and for such further and additional relief as this Court may deem just and proper.

## COUNT III

**(Injunctive Relief – Violation of Due Process and the Eighth Amendment)**

42. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count III.

43. This Count is brought against all defendants other than the Hon. Kenneth Wright seeking injunctive relief to prevent the continued violation of the rights of Plaintiff and the members of the Plaintiff class to have their bond set in a manner consistent with the Due Process clause of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

44. By continuing to conduct video bond hearings in the manner alleged in this complaint the defendants will violate the Plaintiff's rights and the rights of the members of the Plaintiff class to procedural due process, in violation of the Fifth and Fourteenth Amendments of

the United States Constitution and of the Plaintiff's rights and the rights of members of the Plaintiff class not to be subjected to excessive bail in violation of the Eighth Amendment of the United States Constitution..

45.     Plaintiff and the class he represents have no adequate remedy at law and will suffer irreparable harm if an injunction is not entered against the defendants enjoining them from violating the procedural due process rights of Plaintiff and the Plaintiff class.  The balance of harms between the parties favors entering injunctive relief and an injunction in this case would serve the public interest.

WHEREFORE, Plaintiff prays that this Court enter an order certifying this cause as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; that this Court enter an order enjoining the defendants named in this Count from continuing to conduct bond hearings as alleged in this Complaint and directing the defendants to immediately begin conducting such hearings, including the hearings of the Plaintiff and the members of the Plaintiff class, with the bond applicant physically present in the courtroom after having had a reasonable opportunity to consult with counsel and with all participants in the bond hearing process having received a pretrial services report containing background information regarding Plaintiff and the members of the Plaintiff class; that this Court award Plaintiff reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and for such further and additional relief as this Court may deem just and proper.

**COUNT IV**

**(Injunctive Relief – Violation of the Sixth Amendment)**

46. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count IV.

47. This Count is brought against all defendants other than the Hon. Kenneth Wright seeking injunctive relief to prevent the violation of the rights of Plaintiff and the members of the Plaintiff class to have the effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution, in the setting of bond.

48. The Sixth Amendment to the United States Constitution affords bond applicants the right to counsel at their bond hearings.

49. Through no fault of any individual Assistant Public Defender, the structural limitations imposed by the circumstances of the Assistant Public Defender's very limited access to its clients prior to Central Bond Court hearings and by the use video bond technology to conduct those hearings prevent the assigned Assistant Public Defender from assisting bond applicants during Central Bond Court hearings.

50. Although the Office of the Public Defender makes counsel available to bond applicants at Central Bond Court, the likelihood that even the most fully competent lawyer could provide effective assistance counsel under the conditions described in the preceding paragraphs is virtually non-existent.

51. Plaintiff and the class he represents have no adequate remedy at law and will suffer irreparable harm if an injunction is not entered against the defendants enjoining them from violating the Sixth Amendment rights of Plaintiff and the Plaintiff class to have the effective

assistance of counsel.  The balance of harms between the parties favors entering injunctive relief and an injunction in this case would serve the public interest.

      WHEREFORE, Plaintiff prays that this Court enter an order certifying this cause as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; that this Court enter an order enjoining the defendants named in this Count from continuing to conduct bond hearings as alleged in this Complaint and directing the defendants to immediately begin conducting such hearings, including the hearings of the Plaintiff and the members of the Plaintiff class, with the bond applicant physically present in the courtroom after having had a reasonable opportunity to consult with counsel and with all participants in the bond hearing process having received a pretrial services report containing background information regarding Plaintiff and the members of the Plaintiff class; that this Court award Plaintiff reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and for such further and additional relief as this Court may deem just and proper.

      Respectfully submitted,

      **ESSEX MASON, individually and on behalf of a class of similarly situated persons**

      By:   /s/ Locke E. Bowman
           One of his attorneys

Locke E. Bowman
Roderick MacArthur Justice Center
Northwestern University School of Law
357 East Chicago Ave.
Chicago, Illinois  60611
(312) 503-0844

15

## **CERTIFICATE OF SERVICE**

  The undersigned, an attorney, certifies that he served the foregoing First Amended Complaint upon all parties listed on the attached service list who are ECF users were automatically served via the Court's ECF system on Friday, July 11, 2008.

               By:  /s/   Locke E. Bowman
                  One of his attorneys

**SERVICE LIST**
Mason v. County of Cook, et. al.; No. 06 CV 3449

Kathleen L. Ford
Peter Koch
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois  60601
(312) 814-5160
(312) 814-4425 (Fax)
*On behalf of The Honorable E. Kenneth Wright*

Patricia Brown Holmes
Aphrodite Kokolis
Roger Pascal
MiAngel Robinson-Cody
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois  60615
(312) 258-5500
(312) 258-5600 (Fax)
*On behalf of Edwin Burnette*

Daniel F. Gallagher
Terrence F. Guolee
Dominick L. Lanzito
Daniel A. Kirk
Larry S. Kowalczyk
Querrey & Harrow, Ltd.
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois  60604
(312) 540-7000
(312) 540-0578 (Fax)