UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESSEX MASON, individually and on behalf of a class of similarly situated persons, ) ) ) ) Plaintiff, ) ) v. ) ) THOMAS DART, Sheriff of Cook County; EDWIN BURNETTE, Public Defender of Cook County; THE HON. E. KENNETH WRIGHT, Chief Judge of the Municipal Division of the Circuit Court of Cook County, ) ) ) ) ) ) ) ) Defendants. ) | No. 06 C 3449 Hon. James B. Zagel |

**DEFENDANT WRIGHT'S ANSWER
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES the defendant, the Honorable E. Kenneth Wright ("Defendant"), by his attorney, LISA MADIGAN, Attorney General of Illinois and hereby answers Plaintiff's First Amended Complaint as follows:

INTRODUCTION

1.  This is a civil rights action pursuant to 42 U.S.C. § 1983 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution seeking declaratory and injunctive relief with respect to the practices employed in Cook County, Illinois to set bail for indigent persons arrested within the City of Chicago. Cook County conducts bail hearings via closed circuit television rather than through an in-person hearing at which the applicant for bail is physically present in the courtroom with his counsel and with the judge. The Cook County practice of conducting "video bail hearings" results in flagrant denials of the procedural due process rights of bond applicants and of their right to the effective assistance of counsel at their bond hearings. Indigent bond applicants are given no meaningful opportunity to consult with counsel before or during these hearings; are stripped of any realistic ability during the hearing to communicate to the judge personal circumstances relevant to the setting. of bail in their cases; and often have a prohibitively high bail set in a hearing that typically lasts less

than 30 seconds. The defendants could correct this procedural unfairness and hold in-person bond hearings at little or no additional cost.

**ANSWER: Defendant Wright admits that Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution seeking declaratory and injunctive relief with respect to practices employed in Cook County to set bail for indigent persons arrested within the City of Chicago, and further admits that bail hearings are conducted in Cook County via closed circuit television for persons charged with non-probational felonies rather than through an in-person hearing at which the applicant for bail is physically present in the courtroom with his counsel and with the judge. Defendant Wright denies the remaining allegations contained in paragraph 1.**

## JURISDICTION AND VENUE

2. This is a civil action arising under 42 U.S.C. § 1983 and the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. This Court, has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Cook County is located in this District and the events giving rise to the claim occurred in this District.

**ANSWER: Defendant Wright admits the allegations contained in paragraph 2 except as to the allegation that this action arises under the Eighth Amendment to the United States Constitution as Defendant's motion to dismiss that claim is still under advisement.**

## PARTIES

3. Plaintiff Essex Mason is an Illinois citizen and a resident of Chicago, Illinois.

**ANSWER: Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.**

4. Defendant Thomas Dart is the Sheriff of Cook County. His deputies are in charge of the maintenance of the holding pens in which bond applicants are confined prior to their hearings in Central Bond Court.

**ANSWER: Defendant Wright admits that Tom Dart is Sheriff of Cook County. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.**

2

5. Defendant Edwin Burnette is the Public Defender of Cook County. His assistants and investigators are responsible for the effective representation of the indigent detainees who appear in Central Bond Court.

**ANSWER: Defendant Wright admits that Edwin Burnette is the Public Defender of Cook County. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5.**

6. The Hon. Kenneth Wright is the Presiding Judge of the Municipal Division of the Circuit Court of Cook County and, in that capacity, has overall supervisory responsibility for the conduct of Central Bond Court. This suit seeks only declaratory relief against Judge Wright in accordance with 42 U.S.C. § 1983.

**ANSWER: Defendant Wright admits the allegations contained in paragraph 6.**

7. The actions that each of the defendants is alleged to have taken in this case were under color of state law and, thus, constituted state action.

**ANSWER: To the extent the allegations contained in paragraph 7 are directed against Defendant Wright, they are admitted.**

CLASS ACTION ALLEGATIONS

8. Plaintiff files this action on behalf of himself and on behalf of all persons arrested within the City of Chicago who will be deprived of their liberty following a bail hearing at which they will be represented by the Cook County Public Defender and which will be conducted via closed circuit television at the Central Bond Court in the Criminal Court building at 26th Street and California Avenue. This action may be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**ANSWER: Defendant Wright admits that Plaintiff purports to bring this case as a class action and admits that bail hearings are conducted via closed circuit television at Central Bond Court in the Criminal Court building at 26th Street and California Avenue. Defendant Wright denies the remaining allegations contained in paragraph 8.**

9. This class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the Central Bond Court conducts bail hearings via closed circuit television for approximately 100 to 150 arrestees each day and that a substantial percentage of these individuals are unable to make bond and, thus, are deprived of their liberty as a consequence of the video bond hearing.

**ANSWER: Defendant Wright admits that bail hearings are held via closed circuit television for approximately 100 to 150 arrestees each day but denies that this**

constitutes a denial of liberty.  Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegation that a substantial percentage of these individuals are unable to make bond.  Defendant Wright denies the remaining allegations contained in paragraph 9.

10. There are questions of law or fact common to the class. These common questions include, but are not limited to, whether Cook County in fact has a policy and practice of conducting video bail hearings and whether, if this policy exists, it denies bail applicants their Fifth and Fourteenth Amendment rights to procedural due process.

**ANSWER:** **Defendant Wright admits that bail hearings at Central Bond Court are conducted routinely by closed circuit television but denies the remaining allegations contained in paragraph 10.**

11. The Plaintiff's claims are typical of the class. On June 25, 2006, Plaintiff was arrested by the Chicago Police Department who allege that he committed the offense of possession of a stolen motor vehicle.  In accordance with standard practice for persons charged with felony offenses in which the State is not seeking to deny bond, the Plaintiff, at the time this suit was instituted, expected to be transported to the Criminal Courts Complex at 26th St. and California Ave. for a bond hearing, which was conducted via closed circuit television and at which, because Plaintiff is indigent, was represented by the Cook County Public Defender.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff's claims are typical of the class. Defendant Wright lacks knowledge or information of the specific facts of this case sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11.**

12. Plaintiff will fairly and adequately protect the interests of the class. The MacArthur Justice Center, whom Plaintiff has retained to represent the class, is experienced in civil rights and class action litigation and will aggressively seek to vindicate the rights of the Plaintiff class.

**ANSWER:** **Defendant Wright admits that Plaintiff's counsel is experienced in class action civil rights litigation if this case were to proceed as a class action, but denies that the rights of the purported Plaintiff's class are being violated.**

13. The defendants have acted on grounds generally applicable to the class, thereby making appropriate declaratory relief and final injunctive relief with respect to the class as a whole.

**ANSWER:** **Defendant Wright denies the allegations contained in paragraph 13.**

ALLEGATIONS OF FACT

14. In or about June 1999, Cook County implemented General Order 99-6 of the Circuit Court of Cook County (the "Order"), a copy of which is attached hereto as Ex. A. The Order established the Central Bond Court and directed that bond hearings, except in cases where the State is seeking to deny bond for persons charged with non-probationable, felony offenses, "shall be conducted by means of closed circuit television."

**ANSWER:    Defendant Wright admits the allegations contained in paragraph 14.**

15. On each court day, approximately 100 to 150 bond applicants, persons who have been arrested within the past 24 hours within the City of Chicago, are transported from police lock-ups around the City to holding pens located in the basement of the Criminal Court building directly below Courtroom 101, where Central Bond Court is held. The great majority of these persons are indigent and are represented at their bond hearings by the Cook County Public Defender.

**ANSWER:    Defendant Wright admits the allegations contained in paragraph 15.**

16. On information and belief, the holding pens are designed to accommodate approximately 25 to 30 detainees. Two of the pens are designated for males and one is designated for females. A typical call in bond court includes over 100 males. Thus, each male holding pen is filled to close to twice its rated occupancy, making it impossible for detainees even to sit down while waiting in the pens. On most days, individuals who are physically ill and/or who are suffering from drug withdrawal are confined in the holding pens. The noise level in the pens is always excessive and temperatures are sometimes uncomfortable.

**ANSWER:    Defendant Wright admits that a typical call in Central Bond Court includes over 100 males. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16.**

17. Bond applicants represented by the Public Defender have no opportunity to speak with a lawyer prior to the beginning of the Central Bond Court call. Instead, shortly prior to the call, the bond applicants each speak for no more than a few moments with an investigator who stands at the front of the holding pen, calls each detainee forward by name, and records information about their residence, employment, family, and military service on a chart that is then made available to the Assistant Public Defender handling the Central Bond Court call. Because of the conditions in the holding pens and the number of individuals confined there, the conversations between the investigator and the bond applicants are not private or confidential.

**ANSWER:** **Defendant Wright denies the allegation that bond applicants represented by the Public Defender have no opportunity to speak with a lawyer prior to the beginning of the Central Bond Court call. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17.**

18. The Sheriff of Cook County, whose deputies are in charge of the holding pens, strictly limits the access of Public Defender personnel to the bond applicants in the holding pens prior to the beginning of the court call. No access is permitted prior to approximately 10:30 a.m. each day, and access is cut off at approximately 12:15 p.m. Ordinarily, two or three investigators are assigned to conduct interviews of all the detainees. These two or three investigators must "interview" 100 to 150 bond applicants (in the conditions described in the preceding paragraphs) within approximately 100 minutes.

**ANSWER:** **Defendant Wright denies the allegation that that the Sheriff of Cook County strictly limits the access of Public Defender personel to the bond applicants in the holding pens prior to the beginning of the court call and denies the allegation that they are not permitted access to bond applicants prior to approximately 10:30 a.m. each day. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18.**

19. The Circuit Court of Cook County does not provide any of the participants in the bond-setting process with an investigative report regarding the individuals on the Central Bond Court call. As a result, the only information available to the judges who preside over Central Bond Court is the pending charge, the criminal history of the bond applicant and what little information the investigator assembles during the interview described in the preceding paragraph. This is insufficient information to enable the judges to make an informed bond determination.

**ANSWER:** **Defendant Wright admits the allegations in the first and second sentences of paragraph 19, but deny that the information the investigator assembles can be correctly characterized as "little." Defendant Wright denies the remaining allegations contained in paragraph 19.**

20. The Illinois Pretrial Services Act, 725 ILCS 185/0.01 *et seq.*, requires each Circuit Court within the State to establish a pretrial services agency to provide judges who make bond determinations with accurate background data regarding the pretrial release of persons charged with felonies. Since 1990, the Illinois Supreme Court has provided Cook County with funding to hire pretrial services officers to assemble this data. On information and belief, the Circuit Court has redirected the Supreme Court funds to other purposes. In practice, there are no pretrial services officers assigned to prepare background reports on bond applicants on the Central Bond Court call.

**ANSWER:** **Defendant Wright admits the allegations in the first and fourth sentences of paragraph 20. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of remaining allegations contained in paragraph 20.**

21. When Central Bond Court convenes, the bond applicants file through a corridor in the basement of the Criminal Court building to a small room with a podium in the center. Facing the podium are a video camera and a television monitor on which the video image of the judge presiding over the call in Courtroom 101 appears. A Deputy Sheriff directs each bond applicant to the podium when his case is called. An Assistant Public Defender is supposed to be stationed in the basement video room throughout the court call, although he is sometimes absent. This Assistant Public Defender takes no part in the presentation of the cases to the court. This attorney furnishes each bond applicant with a piece of paper listing the next court date in the applicant's case and signals the bond applicants to be silent during the proceedings and to move away from the podium when their cases are finished.

**ANSWER:** **Defendant Wright admits the allegation that when Central Bond Court convenes, the bond applicants file through a corridor in the basement of the Criminal Court building to a small room with a podium in the center, admits that facing the podium are a video camera and a television monitor on which the video image of the judge presiding over the call in Courtroom 101 appears, admits that a Deputy Sheriff directs each bond applicant to the podium when his case is called, and admits that a Public Defender is supposed to be stationed in the basement video room throughout the court call. Defendant Wright denies that the Assistant Public Defender takes no part in the presentation of the cases to the court. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21.**

22. In Courtroom 101, an Assistant Public Defender and an Assistant State's Attorney stand before the bench. Video monitors are situated in the courtroom so that the judge is able to see a video image of the bond applicant. The bond applicant's image on the video monitor is also visible to spectators in the courtroom and can be seen by the attorneys standing before the bench, but only if they step back from the bench and look to the side of the courtroom. The images shown both in the courtroom and in the basement are grainy and of poor quality. Typically the bond applicant's image is not centered on the video monitor.

**ANSWER:** **Defendant Wright admits that in Courtroom 101, an Assistant Public Defender and an Assistant State's Attorney stand before the bench, admits that video monitors are situated in the courtroom so that the judge is able to see a video image of the bond applicant, and admits that the bond applicant's image on the video monitor is also visible to spectators in the courtroom and can be seen by the attorneys standing before the bench. Defendant Wright lacks knowledge or**

**information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22.**

23. The hearings almost always last less than 30 seconds. In that very short period of time, the State's Attorney recites the charges against the detainee; the Court makes a Gerstein v. Pugh finding of probable cause; the State's Attorney "argues" for a high bond (reciting any criminal history or past failures to appear); the Assistant Public Defender reads aloud information concerning the applicant from the investigator's chart (frequently mentioning no more than the applicant's address, marital status, and years of residence in Chicago); the court sets the amount of the bond; and the court continues the case for further hearing - typically on a date two to, three weeks following the bond hearing. The hearings progress so rapidly that it is not uncommon for the proceedings to commence before the defendant is even "present" before the podium.

**ANSWER:   Defendant Wright admits that during a bond hearing the State's Attorney recites the charges against the detainee; the Court makes a Gerstein v. Pugh finding of probable case; the State's Attorney makes the State's case for the appropriate bond; the Assistant Public Defender reads aloud information concerning the applicant from the investigator's chart; the court sets the amount of the bond; and the court continues the court for further hearing.  Defendant Wright denies the remaining allegations contained in paragraph 23.**

24. As a direct and proximate result of their absence from the courtroom, the lack of any opportunity to communicate with counsel prior to the hearing, and the lack of a pretrial services investigative report, the bond applicants are deprived of any meaningful opportunity to communicate to the court information that may be relevant to the setting of bail, including, by way of example, inaccuracies in the criminal history information supplied to the court by the Assistant State's Attorney and/or additional life circumstances that might warrant setting a low bond or allowing the applicant to be released on individual recognizance.

**ANSWER:   Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.**

25. Because of the physical separation between themselves and the court and the lack of any opportunity to communicate with counsel prior to the hearing, applicants typically perceive themselves to have no ability or entitlement to communicate with the court. In fact, on the rare occasions when a bond applicant seeks to address the court directly, he is immediately silenced by the sitting judge.

**ANSWER:   Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.**

26. The bond applicants also have no practical ability to communicate with the Assistant Public Defender handling the hearing in the courtroom. The applicants have not met that Assistant Public Defender prior to the hearing and are unable even to see an image of the Assistant Public Defender on the video monitor in the room in which they are located during the hearing, Therefore, the bond applicants cannot, as a practical matter, communicate to their counsel inaccuracies in the criminal history information supplied to the court by the Assistant State's Attorney and/or additional life circumstances that might warrant setting a low bond or allowing the applicant to be released on individual recognizance.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegation that applicants are unable to see an image of the Assistant Public Defender on the video monitor in the room in which they are located during the hearing. Defendant Wright denies the remaining allegations contained in paragraph 26.**

27. As a direct and proximate result of the bond applicants' physical separation from the judge, the judge loses the ability to perceive those applicants as three dimensional human beings. Research has shown that conducting bond hearings by closed circuit television rather than in person may negatively prejudice the judge against the bond applicants and cause inappropriately high bonds to be entered. In addition, conducting bond hearings in this manner deprives the judge of any opportunity to observe whether there are signs that a particular bond applicant is suffering from injury or illness and in need of treatment.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegation that research has shown that conducting bond hearings by closed circuit television rather than in person may negatively prejudice the judge against the bond applicants and cause inappropriately high bonds to be entered. Defendant Wright denies the remaining allegations contained in paragraph 27.**

28. As a result of the procedures described in the preceding paragraphs, the median bond amounts for persons appearing on the Central Bond Court call are higher (after adjustment for inflation) than the median bond amounts that were set for persons arrested in Cook County prior to the implementation of the Order.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.**

29. Plaintiff was arrested by the Chicago Police on or about June 25, 2006 and charged with the offense of possession of a stolen motor vehicle. At the time this suit was instituted Plaintiff expected to be transported to the Criminal Court Complex at 26th and California Ave. for a hearing in Central Bond Court on June 26, 2006. Plaintiff's bond

hearing was conducted in the manner described in the preceding paragraphs. After a "hearing" that last no more than a few seconds, Plaintiff's bond was set in the amount of $70,000 – an amount that Plaintiff could not possible raise.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.**

30. It would be possible for Cook County to conduct in person bond hearings, and to provide bond applicants with a meaningful opportunity to consult with counsel prior to such hearings at little or no additional cost.

**ANSWER:** **Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.**

31. Bond applicants, who are presumed innocent, have a constitutionally recognized right not to be subjected to excessive bail.

**ANSWER:** **Defendant Wright admits the allegations contained in paragraph 31.**

32. The stakes in the bond hearings described in the preceding paragraphs are extremely high for the bond applicants because they may lose their liberty for a significant period of time as a result of the determination made in the bond hearing. Bond applicants' next opportunity to contest the bail determination is at the preliminary hearing, which typically occurs two to three weeks following the video bail hearing. Assistant Public Defenders almost never seek reconsideration of the bond set in Central Bond Court (either at the time of the preliminary hearing or thereafter) because it is well known that judges in the Circuit Court of Cook County are extremely reluctant to reconsider bond after it has initially been set.

**ANSWER:** **Defendant Wright denies the allegation that the preliminary hearing typically occurs two to three weeks following the video bail hearing. Defendant Wright lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32.**

33. The defendants are acting with deliberate indifference to the rights of Plaintiff and the members of the Plaintiff class by conducting Central Bond Court hearings in the manner alleged in this complaint.

**ANSWER:** **To the extent that the allegations contained in paragraph 33 are directed against Defendant Wright, they are denied.**

COUNT I
(Declaratory Relief - Violation of Due Process and the Eighth Amendment)

34. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count I.

**ANSWER:** **Defendant Wright incorporates by reference his answers to the allegations set forth in the preceding paragraphs.**

35. This Count is brought against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. There is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates Due Process and the Eighth Amendment. This Count seeks an order declaring the rights of the Plaintiff class with respect to that controversy.

**ANSWER:** **Defendant Wright admits that Plaintiff has brought suit against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and that this Count seeks an order declaring the rights of the Plaintiff class. Defendant Wright denies that there is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates Due Process. Defendant Wright makes no response to the allegations that there is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates the Eighth Amendment as Defendant Wright's motion to dismiss that claim is under advisement.**

36. By continuing to conduct video bond hearings in the manner alleged in this complaint the defendants will violate Plaintiff's rights and the rights of the members of the Plaintiff class to procedural due process, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and of the Plaintiff's rights and the rights of members of the Plaintiff class not to be subjected to excessive bail in violation of the Eighth Amendment of the United States Constitution.

**ANSWER:** **Defendant Wright denies the allegations contained in paragraph 36 except as to allegations of violations of the Eighth Amendment to the United States Constitution as to which Defendant Wright makes no response as Defendant's motion to dismiss that claim is under advisement.**

COUNT II
(Declaratory Relief - Violation of the Sixth Amendment)

37. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count II.

11

**ANSWER:** **Defendant Wright incorporates by reference his answers to the allegations set forth in the preceding paragraphs.**

38. This Count is brought against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. There is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates the Sixth Amendment right to the effective assistance of counsel. This Count seeks an order declaring the rights of the Plaintiff class with respect to that controversy.

**ANSWER:** **Defendant Wright admits that Plaintiff has brought suit against all defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and that this Count seeks an order declaring the rights of the Plaintiff class. Defendant Wright denies that there is an actual controversy between the members of the Plaintiff class and the defendants with respect to whether the conduct of bond hearings in Central Bond Court violates the Sixth Amendment right to the effective assistance of counsel.**

39. The Sixth Amendment to the United States Constitution affords bond applicants the right to counsel at their bond hearings.

**ANSWER:** **Defendant Wright admits the allegations contained in paragraph 39.**

40. Through no fault of any individual Assistant Public Defender, the structural limitations imposed by the circumstances of the Assistant Public Defender's very limited access to its clients prior to Central Bond Court hearings and by the use video bond technology to conduct those hearings prevent the assigned Assistant Public Defender from assisting bond applicants during Central Bond Court hearings.

**ANSWER:** **To the extent that paragraph 40 contains allegations directed against Defendant Wright, they are denied.**

41. Although the Office of the Public Defender makes counsel available to bond applicants at Central Bond Court, the likelihood that even the most fully competent lawyer could provide effective assistance counsel under the conditions described in the preceding paragraphs is virtually non-existent.

**ANSWER:** **Defendant Wright admits that the Office of the Public Defender makes counsel available to bond applicants at Central Bond Court but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41.**

COUNT III
(Injunctive Relief - Violation of Due Process and the Eighth Amendment)

**ANSWER: Defendant Wright makes no answer to the allegations contained in Count III as it is not directed against him.**

COUNT IV
(Injunctive Relief- Violation of the Sixth Amendment)

**ANSWER: Defendant Wright makes no answer to the allegations contained in Count IV as it is not directed against him.**

WHEREFORE, Defendant E. Kenneth Wright respectfully resquests that judgment be entered in his favor and against Plaintiff and that the Court grant Defendant any and all further relief it deems appropriate.

LISA MADIGAN
Illinois Attorney General

Respectfully submitted,

/s/ Peter C. Koch
PETER C. KOCH
Assistant Attorneys General
General Law Bureau
100 W. Randolph St., 13th Floor
Chicago, Illinois 60601
(312) 814-6534
pkoch@atg.state.il.us

13

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record, hereby certifies that this Answer to Plaintiff's First Amended Complaint was filed electronically this 30th day of October 2008. Parties may access this filing through the Court's CM/ECF electronic filing system.

/s/ Peter C. Koch
PETER C. KOCH
Assistant Attorneys General
General Law Bureau
100 W. Randolph St., 13th Floor
Chicago, Illinois 60601
(312) 814-6534
pkoch@atg.state.il.us